ASH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew Muller,<br><br>Plaintiff,<br><br>v.<br><br>United States of America, et al.,<br><br>Defendants. | No.   CV 18-00376-TUC-RCC<br><br>**ORDER** |

On August 2, 2018, Plaintiff Matthew Muller, who is confined in the United States Penitentiary in Tucson, Arizona (USP-Tucson), filed, through counsel, Complaint for Injunctive and Declaratory Relief (Doc. 1) pursuant to 28 U.S.C. § 1331 and the Administrative Procedures Act (5 U.S.C. § 701 et seq.) (the "APA"), and paid the filing fee. On August 7, 2018, Plaintiff filed a First Amended Complaint (Doc. 7),[1] as well as a Motion for Temporary Restraining Order and Preliminary Injunction (the "PI/TRO Motion") (Doc. 6), and, two days later, an Emergency Motion for Temporary Restraining Order (Doc. 9) that largely repeats by incorporation the arguments from the PI/TRO Motion. The Court will deny the motions, and dismiss the First Amended Complaint with leave to amend.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief

---

[1] The First Amended Complaint supersedes the original Complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

**JDDL-K**

against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

**II.     First Amended Complaint**

In his three-count First Amended Complaint, Plaintiff names as Defendants: the United States of America; Robbie L. Rhodes, the Warden at the Federal Correctional Institution in Tucson, Arizona (FCI-Tucson); Juan Baltazar, the Warden at the Federal Correctional Center in Tucson, Arizona (FCC-Tucson); W. Jusino, the Associate Warden at USP-Tucson; Lorri Mitchell, a Legal Assistant at USP-Tucson; and several unidentified individuals referred to as "Jane/John Does 1-25 employees at USP-Tucson."

Plaintiff purports to sue all Defendants in their official capacities,[2] and seeks declaratory and injunctive relief.

Plaintiff's claims arise from a common core of operative facts, as follows: Plaintiff is a former attorney who has used his background to assist other inmates with their own legal matters. Displeased with Plaintiff's assistance, prison officials began to retaliate against him. On April 25, 2018, Plaintiff was charged with "the BOP's highest offense category," which required that he be placed in the Special Housing Unit (SHU). Plaintiff's personal property was seized, and he was denied his prescription psychiatric medications while in the SHU. Plaintiff requested medical assistance several times, eventually prompting his placement in a cell with an inmate known to prison officials as a sexually violent inmate who was supposed to be housed alone. Between May 1 and May 4, Plaintiff "submitted at least six written requests to be moved, stating the he was in imminent danger from Gaines," including two requests that he handed to Jusino on May 2. On the night of May 2, the inmate raped Plaintiff and threatened to kill him. On May 4, 2018, Plaintiff was removed from the cell. However, Plaintiff was placed with another sexually violent inmate, who, on May 8, attacked and beat Plaintiff. Eventually, Plaintiff was placed with a non-violent inmate in another cell in the SHU.

Further, while in the SHU, Plaintiff was "frequently denied basic supplies such as

---

[2] A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that the individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). By comparison, a suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky*, 473 U.S. at 165. That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). Although Plaintiff has named the defendants in their official capacities, Plaintiff's allegations fail to plausibly show that any policy, practice, or custom of any entity has resulted in his alleged injuries. Indeed, Plaintiff repeatedly alleges that it was the Defendants' *failure* to follow the relevant regulations and policies that caused his alleged injuries. Accordingly, the Court will construe Plaintiff's claims as directed against the Defendants in their *individual* capacities, and evaluate them accordingly.

1   toilet paper, a standard mattress and meal compliant with his religious diet." Plaintiff
2   was only allowed outside once in 64 days. The SHU "was infested with bedbugs and/or
3   lice, ants, and cockroaches," and Plaintiff was constantly covered by bites, as well as a
4   rash after contracting ringworm. The cell walls were contaminated with pepper spray
5   that caused skin inflammation, and Plaintiff's cell was twice flooded by sewage.

6   Additionally, Plaintiff's mental health deteriorated while in the SHU. Plaintiff
7   attempted to seek treatment, but the doctor "did not provide any treatment or make any
8   attempts to ameliorate [Plaintiff's] situation." Plaintiff began to become depressed, and
9   he "made definite plans to kill himself." However, Plaintiff's cellmate "wrote messages"
10  to the doctor and Rhodes indicating that Plaintiff had severe depression and feared for his
11  safety, but no action was taken. After Plaintiff was released from the SHU, he
12  "convinced [his] regular psychologist … to intervene." Plaintiff also learned that shortly
13  before his release from the SHU, Mitchell had written an incident report that "included
14  false charges that [Plaintiff] was doing legal work for pay contrary to prison rules."

15  Plaintiff's family obtained counsel "to assist with the situation." However,
16  "prison officials" initially told the attorney she was not allowed to visit Plaintiff, though a
17  visit was eventually allowed. After "weeks of requests," Plaintiff was allowed "a few
18  calls" to the attorney, as well as to his criminal attorney in California. Plaintiff requested
19  the forms to seek administrative relief, but none were provided. Plaintiff's family
20  eventually sent him copies of the forms they "printed from the internet." Plaintiff
21  completed several forms and "attempted to submit them" to Rhodes and Jusino, but they
22  refused to accept them because they "were not the official versions printed on carbon
23  paper."

24  On April 21, 2018, counsel's paralegal contacted "prison officials" to arrange a
25  forensic examination of Plaintiff by a psychologist for the purposes of "document[ing
26  Plaintiff's] poor state of mental health in the SHU," as well as supporting claims in
27  Plaintiff's ongoing § 2255 action in the Eastern District of California,[3] and "in another
28

---

[3] Case no. 2:15-CR-0205-TLN-EFB (E.D.Cal. 2015).

pending criminal matter," apparently in reference to state criminal proceedings in Solano County, California.[4] On June 26, having received no response, the paralegal again contacted the prison to enquire about the request. Defendant Mitchell replied that the psychologist would not be allowed to examine Plaintiff without a court order. Plaintiff alleges that Mitchell "did not consult with the USP-Tucson Warden or with the [Bureau of Prisons] Western Regional Counsel before pronouncing this decision, in violation of BOP policy and procedures." Plaintiff and his counsel made repeated attempts to arrange the psychologists visit, but "Defendants" would only restate that the visit would not be allowed absent a court order.

Additionally, on July 20, the paralegal sought a visit in order to obtain Plaintiff's signature and to collect exhibits. "Defendants" refused to allow the paralegal to visit without counsel's presence, "citing [the paralegal's] 'background and history.'"[5] Plaintiff alleges that "Defendants" failed to consult with the BOP Western Regional Counsel before denying the visit, and "did not act from any actual belief that [the paralegal] posed an unacceptable threat to institutional security." Plaintiff alleges that by requiring that counsel be present with the paralegal, "Defendants failed to follow BOP procedures for restricting legal visits, acted arbitrarily and capriciously, and imposed additional costs for representation on Plaintiff."

Accordingly, Plaintiff raises three causes of action. In Count One, Plaintiff alleges a violation of his First and Sixth Amendment rights because "Defendants' practices

---

[4] In the exhibits attached to his PI/TRO Motion, Plaintiff indicates that the psychologist's evaluation and report is "to document the medical necessity of a short delay in [Plaintiff's] extradition to Solano County, California." (Doc. 6 at 34, 36). Plaintiff expressly indicates that the psychologist's evaluation "is not for purposes of medical treatment," but that the psychologist "is acting as an expert witness…" (*Id.*).

[5] Plaintiff indicates that the paralegal is a former BOP prisoner, and was apparently on probation on the time of the visitation request. (Doc. 7 at 20, 21). Plaintiff also alleges that Mitchell subjected the paralegal to "an invasive background examination" on July 2 without first obtaining his consent, and that Mitchell also contacted the paralegal's probation officer to suggest that the paralegal was in violation of the terms of his probation. (Doc. 7 at 21). While these allegations may support that Mitchell has, in some way, violated the *paralegal's* rights, they do not support that these actions have violated any of *Plaintiff's* rights.

unjustifiably obstruct the availability of professional representation and other legal services to [Plaintiff.]"  In Count Two, Plaintiff alleges that "Defendants … acted contrary to federal regulations and agency policy in refusing [the psychologist] and [paralegal] visits," in violation of the APA.  In Count Three, Plaintiff alleges that he has been retaliated against, in violation of the First Amendment.

### III. Failure to State a Claim

As an initial matter, Plaintiff makes no allegations against either Baltazar or the "Jane/John Does 1-25 employees at USP-Tucson."  Accordingly, these Defendants will be dismissed.

### A. Count One

Plaintiff styles Count One as arising pursuant to the First and Sixth Amendment, and as being related to the "unjustifiabl[e] obstruct[ion of] the availability of professional representation and other legal services to [Plaintiff]."  The precise nature of Plaintiff's claim is unclear, however.  To the extent Plaintiff is attempting to allege an access-to-counsel claim – as suggested by his PI/TRO Motion ("The right of access to the courts *and to counsel* are among the most-well-established of prisoner's rights") (Doc. 6 at 9) (emphasis added) – he has failed to state a claim.  There is no constitutional right to the appointment of counsel in a civil case.  *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982).  This matter, as well as Plaintiff's § 2255 proceeding in the Eastern District of California, are civil matters.[6]  As such, because there is no federal constitutional right to counsel in such cases, it follows that Defendants cannot have violated a non-existent right.  Accordingly, to the extent Plaintiff is attempting to allege a right-to-counsel claim, he has failed to state a claim.

To the extent Plaintiff is attempting to allege an access-to-*courts* claim, he has also failed to state a claim.  The right of access to the courts is only a right to bring petitions or complaints to federal court and not a right to discover such claims or even to ligate

---

[6] The Court notes that Plaintiff has indicated that he is represented by counsel in his state criminal proceeding.  (*See* Doc. 7 at 24, ¶ 91).  Accordingly, there can be no denial of access-to-counsel with regard to that matter because Plaintiff is, in fact, represented by counsel.

them effectively once filed with a court. *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The right "guarantees no particular methodology but rather the conferral of a capability–the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id*. at 356.

As a matter of standing, for an access-to-courts claim, a plaintiff must show that he suffered an "actual injury" with respect to contemplated litigation. *Id*. at 349. To show actual injury with respect to contemplated litigation, the plaintiff must demonstrate that the defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous claim that he wished to present. *Id*. at 352-53. "[T]he injury requirement is not satisfied by just any type of frustrated legal claim." *Id*. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id*. at 355.

It is unclear to the Court precisely what action or claim Plaintiff alleges he has been prevented by Defendants from bringing. As indicated, Plaintiff is presently represented by counsel in this action, and by separate counsel in his state criminal proceedings.[7] With regard to any claims related to those actions, the presence of counsel provides the relevant access. *United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir. 1982). As such, the only action to which an access-to-the-courts claim may extend is Plaintiff's currently ongoing § 2255 proceeding in the Eastern District of California, in which he is proceeding pro se. (*See* Doc. 63 in 2:15-CR-0205-TLN-EFB (E.D.Cal 2015).) Plaintiff alleges that he "had planned on submitting [the psychologist's] expert report in support of his § 2255 claims," specifically with regard to whether his attorney provided effective assistance by failing to investigate Plaintiff's mental health. However, a review of the docket in that case reveals that Plaintiff has, in fact, brought that claim. (*See* Doc. 61 at 27-35 in 2:15-CR-0205-TLN-EFB (E.D.Cal 2015).) That Plaintiff may

---

[7] Because Plaintiff is currently represented by counsel in his state criminal proceeding, the Court is unable to deduce what Sixth Amendment claim Plaintiff may be attempting to make.

be presently unable to present the psychologist's examination in *support* of that claim does not mean that Defendants have prevented him from bringing the claim at all.[8] Accordingly, regardless of whether Plaintiff's allegations in Count One are construed as an access-to-counsel claim or and access-to-the-courts claim, he has failed to state a claim in Count One, and it will thus be dismissed.

### B. Count Two

Plaintiff brings Count Two pursuant to the Administrative Procedures Act (5 U.S.C. § 701 et seq.) (the "APA").  Plaintiff alleges that "Defendants … acted contrary to federal regulations and agency policy" when refusing the visit by the psychiatrist, and that these actions were arbitrary and capricious.  Plaintiff has failed to state a claim. First, Plaintiff has failed to allege that Mitchell's denial of the request constitutes either an "agency action made reviewable by statute" or a "final agency action" for purposes of this Court's jurisdiction under the APA.  5 U.S.C. § 704.  Moreover, Plaintiff's conclusory allegation that Mitchell's actions were "contrary to federal regulations and agency policy" are insufficient.  Specifically, Plaintiff fails to identify *what* "federal regulations" or "agency policy" Mitchell has violated, or to explain how Mitchell has violated them.[9]  Although Plaintiff alleges that Mitchell "did not consult with the USP-Tucson Warden or with the BOP Western Regional Counsel" before denying his request, Plaintiff fails to identify where this requirement exists, and the Court has been unable to locate it.[10]  Conclusory and vague allegations will not support a cause of action.

---

[8] The Court further notes that although the Magistrate Judge in the § 2255 action has recommended that Plaintiff's claims related to his attorney's alleged failure to investigate his mental health be dismissed on waiver grounds (Doc. 65 in 2:15-CR-0205-TLN-EFB (E.D.Cal 2015)), the assigned District Judge has not ruled on that recommendation as of the date of this order.  Accordingly, that claim remains pending, and whatever "influence" the psychologist's report may or may not have on the disposition of that claim is purely speculative at this juncture.

[9] The Court further notes that in her response to the paralegal's request that the psychologist be allowed to examine Plaintiff, Mitchell cited a specific BOP policy – 6031.04 – as the basis for denying the request. (Doc. 6 at 30).  Plaintiff has not explained how Mitchell's denial of the request violated this policy.

[10] The Court notes that the BOP's operating regulations consist of nearly 400 individual program statements containing thousands of interrelated policies and

Plaintiff's further allegation that "Defendants" failed to consult with the BOP Western Regional Counsel before denying the request that the paralegal be allowed to visit alone fails to connect this action with any named Defendant. Simply stating that "Defendants" took some action without specifying *which* Defendant took what action is insufficient. Accordingly, Plaintiff has failed to state a claim in Count Two, and it will thus be dismissed.

### C. Count Three

Plaintiff styles Count Three as a retaliation claim arising under the First Amendment. A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Although Plaintiff fails to connect his allegations in Count Three to any named Defendant, the Court will holistically consider Plaintiff's allegations as best it can. With regard to Jusino, Plaintiff's only allegation that could be considered retaliatory is that, on May 2, Plaintiff handed Jusino two requests that he be transferred out of the cell with the sexually violent inmate. However, Plaintiff does not allege that Jusino failed to remove

---

subpolicies. It is not the Court's responsibility to ferret out the "federal regulations" and "agency policy" that Plaintiff alleges are at issue in this action.

- 9 -

Plaintiff from the cell *because of* Plaintiff's exercise of his protected rights. Indeed, Plaintiff does not allege facts to support that Jusino was even *aware* of any protected conduct that Plaintiff had engaged in. All of Plaintiff's allegations related to his placement and treatment in the SHU and, ultimately, in the cells with the sexually violent inmates, are directed at officers who are not named as Defendants to this action. There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability on the supervisor. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Similarly, Plaintiff's allegation that he attempted to submit copies of several "forms" to Jusino and Rhodes is insufficient. Plaintiff alleges that Jusino and Rhodes refused to accept the forms because they "were not the official versions printed on carbon paper." These allegations do not support that Rhodes and Jusino refused the forms because of Plaintiff's exercise of any protected right; rather, it supports only that they refused to accept the forms because the forms were improper.

Finally, Plaintiff's allegation that his cellmate wrote "messages" to Rhodes and a doctor stating that Plaintiff was depressed and a danger to himself, but that "no action was taken" do not support that Rhodes has retaliated against Plaintiff in violation of the First Amendment. Plaintiff does not allege facts to support that the failure to take any action pursuant to the "messages" was predicated on Plaintiff's exercise of any protected right. In sum, Plaintiff has failed to allege facts to support that either Jusino or Rhodes have violated Plaintiff's First Amendment rights in Count Three.

With regard to Mitchell, Plaintiff's allegation that Mitchell wrote a "false" report against him while he was in SHU is insufficient to state a First Amendment claim. Plaintiff does not allege facts to support that Mitchell wrote the report in retaliation for any protected action Plaintiff had engaged in – indeed, Plaintiff makes no allegation that Mitchell was even aware of why Plaintiff was in the SHU in the first place – nor has

1   Plaintiff alleged that he was injured in any way as a result of the report. Similarly, with
2   regard to Mitchell's denial of the request that Plaintiff be examined by the psychologist,
3   Plaintiff fails to allege facts to support that the denial was because of Plaintiff's exercise
4   of any protected, or that the denial had no legitimate penological purpose.[11] Accordingly,
5   Plaintiff has failed to state a claim against Mitchell in Count Three, and Count Three will
6   thus be dismissed.

## V.   Leave to Amend

For the foregoing reasons, Plaintiff's Complaint will be dismissed for failure to state a claim upon which relief may be granted. Within 30 days, Plaintiff may submit a first amended complaint to cure the deficiencies outlined above. The Clerk of Court will mail Plaintiff a court-approved form to use for filing a first amended complaint. If Plaintiff fails to use the court-approved form, the Court may strike the amended complaint and dismiss this action without further notice to Plaintiff.

Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint." The first amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original Complaint by reference. Plaintiff may include only one claim per count.

A first amended complaint supersedes the original Complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will treat the original Complaint as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action that was raised in the original Complaint and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in a first amended complaint. *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

If Plaintiff files an amended complaint, Plaintiff must write short, plain statements telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name

---

[11] As the Court has previously noted, Mitchell explicitly denied the request on prison policy grounds. (Doc. 6 at 30).

of the Defendant who violated the right; (3) exactly what that Defendant did or failed to do; (4) how the action or inaction of that Defendant is connected to the violation of Plaintiff's constitutional right; and (5) what specific injury Plaintiff suffered because of that Defendant's conduct. *See Rizzo*, 423 U.S. at 371-72, 377.

Plaintiff must repeat this process for each person he names as a Defendant. If Plaintiff fails to affirmatively link the conduct of each named Defendant with the specific injury suffered by Plaintiff, the allegations against that Defendant will be dismissed for failure to state a claim. **Conclusory allegations that a Defendant or group of Defendants has violated a constitutional right are not acceptable and will be dismissed**.

**VI.    Motions**

Plaintiff has filed two motions seeking a temporary restraining order and preliminary injunction. Whether to grant or deny a motion for a temporary restraining order is within the Court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132-33 (9th Cir. 1979). "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Whitman v. Hawaiian Tug & Barge Corporation/Young Bros., Ltd. Salaried Pension Plan*, 27 F. Supp. 2d 1225, 1228 (D. Haw. 1998). To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 21 (2008). The moving party has the burden of proof on each element of the test. *Environmental Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

The Ninth Circuit has also concluded that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after *Winter*. Under that test, "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the

plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Here, because Plaintiff has failed to state a claim against any named Defendant, he has necessarily failed to demonstrate that he is likely to succeed on the merits of his claims or that there are serious questions going to the merits of his claims. Accordingly, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 6) and Emergency Motion for Temporary Restraining Order (Doc. 9) will be denied.

**VII. Warnings**

**A. Address Changes**

If Plaintiff's address changes, Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**B. Possible "Strike"**

Because the Complaint has been dismissed for failure to state a claim, if Plaintiff fails to file an amended complaint correcting the deficiencies identified in this Order, the dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g). Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

**C. Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik*, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) The First Amended Complaint (Doc. 7) is **dismissed** for failure to state a claim. Plaintiff has **30 days** from the date this Order is filed to file a first amended complaint in compliance with this Order.

(2) If Plaintiff fails to file an amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g) and deny any pending unrelated motions as moot.

(3) Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 6) and Emergency Motion for Temporary Restraining Order (Doc. 9) are **denied**.

Dated this 9th day of August, 2018.

_____
Honorable Raner C. Collins
Chief United States District Judge