ASH

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Matthew Muller, | No.  CV 18-00376-TUC-RCC |
| Plaintiff, | |
| v. | **ORDER** |
| United States of America, et al., | |
| Defendants. | |

On August 2, 2018, Plaintiff Matthew Muller, who is confined in the United States Penitentiary in Tucson, Arizona (USP-Tucson), filed, through counsel, a Complaint for Injunctive and Declaratory Relief (Doc. 1) pursuant to 28 U.S.C. § 1331 and the Administrative Procedures Act (5 U.S.C. § 701 et seq.) (the "APA"), and paid the filing fee.  On August 7, 2018, Plaintiff filed a First Amended Complaint (Doc. 7),[1] as well as a Motion for Temporary Restraining Order and Preliminary Injunction, and, two days later, an Emergency Motion for Temporary Restraining Order.  By Order dated August 10, 2018, the Court dismissed the First Amended Complaint for failure to state a claim, and denied the two motions seeking injunctive relief as moot.  Plaintiff was provided with 30 days in which to file an amended complaint that cured the deficiencies identified in the Order.

_____

[1] The First Amended Complaint superseded the original Complaint.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

On August 23, 2018, Plaintiff filed a Second Amended Complaint (Doc. 11),[2] and, the next day, another Emergency Motion for Temporary Restraining Order and Preliminary Injunction (the "TRO/PI Motion") (Doc. 12). The Court will dismiss the Second Amended Complaint, and will deny the Motion as moot.

## I.   Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's

---

[2] Plaintiff has also filed a Notice of Errata (Doc. 13) noticing typographical errors such as "formatting of headings and subheadings, and replacing the heading for the third count, which was omitted by error." (Doc. 13 at 1.) Plaintiff attaches a corrected Second Amended Complaint (Doc. 13-1) and asks that it be substituted for the originally filed Second Amended Complaint. The Court will grant the request and consider the corrected Second Amended Complaint as the operative complaint.

specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

## II.   Second Amended Complaint

In his four-count Second Amended Complaint, Plaintiff names as Defendants: the United States of America; Juan Baltazar, the Warden at the Federal Correctional Center in Tucson, Arizona (FCC-Tucson); Robbie L. Rhodes, the Warden at the Federal Correctional Institution in Tucson, Arizona (FCI-Tucson); Thahesha L. Jusino, the Associate Warden at USP-Tucson; Lora R. Molinar, a supervisory correctional systems specialist at USP-Tucson; and Lorri Mitchell, a Legal Assistant at USP-Tucson; Plaintiff names all Defendants in both their individual and official capacities.  Plaintiff asserts that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), as well as the Administrative Procedures Act (5 U.S.C. § 701 et seq.) (the "APA"), and he seeks declaratory and injunctive relief only.[3]  Plaintiff alleges four claims for relief:

Claim One: "Interference with access to the courts," in violation of the First Amendment;

Claim Two: "Arbitrary and egregious official conduct," in violation of substantive due process under the Fifth Amendment;

Claim Three: "Arbitrary and capricious agency action not in conformance with required procedure," in violation of the APA; and

Claim Four: "Deprivation without due process of right to extradition hearing and to contest transfer under the [Interstate Agreement on Detainers Act (IADA)]," in violation of the Due Process clause of the Fifth Amendment.

As with his original and First Amended Complaints, Plaintiff provides a lengthy recitation of the conditions of his confinement and treatment at USP-Tucson in the

---

[3] Plaintiff asserts that this action is "a narrow, forward-looking action," and that "he is not looking to establish liability of particular defendants for past conduct, nor respondeat superior liability of their supervisors." (Doc. 13-1 at 5, fn. 6.)  Plaintiff explicitly states that "the requested relief is ***not*** for damages…" (*Id.* at 61) (emphasis in original).

months leading up to the present action (Doc. 13-1 at 9-45).  The Court discussed these facts in its previous order (*see* Doc. 10 at 3-6), and will not repeat them here in the interest of brevity.  Further, because Plaintiff indicates that much of this recitation is only "to provide context," and because much of the facts alleged are irrelevant to Plaintiff's stated causes of action, the Court will address only those facts relevant to Plaintiff's claims, *infra*.

## III.   Failure to State a Claim

### A.   Claim One

Plaintiff alleges that Defendants Baltazar, Rhodes, Jusino, and Mitchell, and, nominally, the United States, have violated his First Amendment right of access to the courts[4] by refusing to allow a psychologist to examine Plaintiff.  Plaintiff alleges that the psychologist's examination is needed "to effectively present and litigate his legal claims"; specifically, to "support claims related to Plaintiff's motion for relief under 28 U.S.C. §2255[5] and claims relating to a criminal matter pending in Solano County, California[6]."  (Doc. 13-1 at 35-6).  Plaintiff further asserts that the examination "was needed to meet a deadline in [Plaintiff's] § 2255 case, and was further needed to justify a delay in a pending extradition" to Solano County.  (*Id.* at 37; *see also id.* at 38-9: the report "was needed to buttress [Plaintiff's] expected request under the [IADA] that his pending transfer be delayed for mental health reasons.").[7]

---

[4] In his TRO/PI Motion, Plaintiff also cites *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), for the proposition that "the right of access to counsel [is] an independent constitutional right, rather than one appurtenant to the right of access to the courts."  542 U.S. at 539.  While that may have once been true for purposes of enemy combatants seeking to challenge their detention via habeas corpus, *see* 28 U.S.C. § 2241(e), Plaintiff is not an enemy combatant and he is not seeking habeas corpus relief in this action.  There is no constitutional "right of access to counsel" in federal civil cases.  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982).

[5] *See* Case no. 2:15-CR-0205-TLN-EFB (E.D. Cal. 2015).

[6] *See People v. Matthew David Muller*, case no. VCR231350 (California Superior Court for the County of Solano).

[7] Plaintiff also asserts that the examination is necessary to "preserve evidence" relevant to "a prospective Eighth Amendment 'failure to protect' claim against Kenneth Schied" – who is not named as a Defendant to this action – "and others known and

There are two types of access to the court claims.  In one line of cases, sometimes referred as the "right to assistance" line of cases, the Supreme Court has held that the fundamental right of access to the courts requires prison authorities to provide prisoners with the tools necessary "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  *Lewis v. Casey,* 518 U.S. 343, 355 (1996); *see also Bounds v. Smith,* 430 U.S. 817, 828 (1977); *Wolff v. McDonnell,* 418 U.S. 539, 579-80 (1974); *Johnson v. Avery,* 393 U.S. 483, 490 (1969).  This first line of cases is limited to legal actions attacking a prisoner's conviction, sentence, or conditions of confinement, and does *not* extend to other types of legal proceedings.  Because Plaintiff does not attack his conviction, sentence, or conditions of confinement in this action, this line of cases is inapposite to Plaintiff's claim.

The second line of cases – sometimes referred to as the "active interference" cases – prohibits government officials from actively interfering with a legal action, so long as the action has a reasonable basis in law or fact.  *See McDonald v. Smith,* 472 U.S. 479, 484 (1985) ("[F]iling a complaint in court is a form of petitioning activity; but baseless litigation is not immunized by the First Amendment right to petition." (internal quotation marks and citations omitted)); *Bill Johnson's Rests., Inc. v. NLRB,* 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."); *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition.").  The parallel development of these two distinct lines of cases was well discussed by the Sixth Circuit in *John L. v. Adams,* 969 F.2d 228 (6th Cir. 1992).  That court held that "in order to assure that incarcerated persons have meaningful access to [the] courts, states are required to provide affirmative

_____

unknown," and that this "evidence is relevant both to damages and to corroborating [Plaintiff's] account of the ordeal he suffered" at USP-Tucson.  (Doc. 13-1 at 52-3). Because Plaintiff does not assert any Eighth Amendment basis for relief in his Second Amended Complaint, and because he has explicitly disclaimed seeking either retrospective relief or damages in the instant action (*see* footnote 3, *supra*), these claims are irrelevant and will not be considered here as a basis for relief.

assistance in the preparation of legal papers in cases involving constitutional rights and other civil rights actions related to their incarceration," but "in all other types of civil actions, states may not erect barriers that impede the right of access of incarcerated persons." *Id.* at 235.  As such, the "active interference" species of claim is *not* limited in the way that the "right to assistance" species is, but instead encompasses *all* types of civil proceedings so long as those proceedings have a reasonable basis in law or fact. *McDonald*, 472 U.S. at 484; *see also Blaisdell v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013) ("by virtue of their broader right to petition the government for a redress of [their] grievances under the First Amendment, prisoners must also have opportunities to pursue certain other types of civil litigation.") (internal quotations and citations omitted).

Regardless of which species of claim is alleged, however, to establish that he was denied meaningful access to the courts, a plaintiff must allege facts supporting that he suffered an "actual injury" as a result of the defendants' actions.  *See Lewis*, 518 U.S. 343.  An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348.

With regard to his § 2255 proceeding, Plaintiff asserts, in part, that the psychologist's examination "was needed to meet a deadline in [Plaintiff's] § 2255 case." Having reviewed the docket in Plaintiff's § 2255 action, the Court can find no obvious "deadline" that Plaintiff needed to meet.  Plaintiff filed his § 2255 Motion on April 9, 2018.[8]  On April 11, 2018, the assigned District Judge noted receipt of the Motion, and referred it to a Magistrate Judge for preliminary review pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings and 28 U.S.C. § 636.[9]  On July 18, 2018, the Magistrate Judge duly issued a Report and Recommendation (R&R) that the government be required to answer several of Plaintiff's counts, and that the remaining counts be dismissed.[10]  The Magistrate Judge further noted that Plaintiff had fourteen days to file

---

[8] *See* Doc. 61 in 2:15-CR-0205-TLN-EFB (E.D. Cal. 2015).

[9] *See* Doc. 64 in 2:15-CR-0205-TLN-EFB (E.D. Cal. 2015).

[10] *See* Doc. 65 in 2:15-CR-0205-TLN-EFB (E.D.Cal. 2015).  Specifically, the

any objections to the R&R.[11]  Citing delays in the receipt of his mail, Plaintiff filed a Motion for Extension of Time to file his objections on August 3, 2018,[12] the District Judge granted that Motion on August 21, 2018, and provided Plaintiff with 45 days from the date of the Order in which to file his objections.[13]  No other deadline is, or was, pending in the case.

According to Plaintiff, the first request that the psychologist be allowed to examine him was submitted to prison officials on April 21, 2018 – twelve days *after* he had already filed his § 2255 Motion, and ten days after his § 2255 motion had been referred to the Magistrate Judge for preliminary review.  Defendants denied the request on June 26, stating that they would not allow the psychologist to examine Plaintiff "without a court order."  Despite the examination purportedly being necessary to "support claims" in Plaintiff's § 2255 Motion, Plaintiff did not seek any court order in his § 2255 proceeding to be permitted to have his psychologist examine him, nor did he seek discovery or expansion of the record in that case so as to bring the psychologist's intended report before that court as part of that action.[14]  Indeed, it was not until June 29 – more than two *months* after he had filed his § 2255 Motion – that Plaintiff first informed Defendants that the examination was "needed to meet a deadline in [Plaintiff's] § 2255."[15]  Notably, however, there was no pending deadline in Plaintiff's § 2255 proceeding on June 29.  Rather, as of that date, the court was still conducting its

---

Magistrate Judge recommended that counts 1-11, 12(a)-(d) and (f)-(i), and 14 be denied, and that the government be required to answer counts 12(e) – related to counsel's recommendation that Plaintiff accept a plea agreement to "avoid the fallout from [a] blown deadline [to notice an intent to present an insanity defense]" – and 13 – related to Plaintiff's claim that his plea was not knowing, intelligent, and voluntary.

[11] *Id.*

[12] *See* Doc. 66 in 2:15-CR-0205-TLN-EFB (E.D. Cal. 2015).

[13] *See* Doc. 67 in 2:15-CR-0205-TLN-EFB (E.D. Cal. 2015).

[14] *See* Rules 6 and 7 of the Rules Governing Section 2255 Proceedings.

[15] *See also* Doc. 13-1 at 79 (stating that Plaintiff "face[s] a past-due filing deadline" in his § 2255).

1  preliminary review of Plaintiff's §2255.

2  　　As such, it strains credulity – and the public record – to suggest that the

3  Defendants have somehow interfered with a "deadline" in Plaintiff's § 2255 proceeding.

4  More importantly for purposes of Plaintiff's First Amendment claim in this action,

5  however, is that the above reveals that Plaintiff has failed to demonstrate that he has

6  suffered any actual injury in his § 2255 proceeding as a result of Defendants' refusal to

7  allow the psychologist to examine him.   Plaintiff asserts that the psychologist's

8  examination is necessary to "persuade the [§ 2255 Court] that [Plaintiff's] case merits an

9  evidentiary hearing – and ultimately to prove whether Plaintiff's severe depression

10  rendered him unable to knowingly, intelligently, and voluntarily plead guilty" (Doc. 13-1

11  at 51).[16]   However, a review of the docket in Plaintiff's § 2255 proceeding reveals that

12  Plaintiff has not even sought an evidentiary hearing in that proceeding,[17] nor has he filed

13  any motion for discovery or to expand the record in his § 2255 case pursuant to Rules 6

14  and 7 of the Rules Governing Section 2255 Cases.   Further, the Court notes that

15  Plaintiff's claim regarding whether he knowingly, intelligently, and voluntarily entered

16  his plea agreement is one of the claims the Magistrate Judge has recommended that the

17  government respond to,, and that it *not* be dismissed.[18]

18  　　Plaintiff makes no allegation that the Defendants have prevented him from filing

19  any pleadings in his § 2255 proceeding – for instance, a motion seeking to be examined

20  by his psychologist, or, as mentioned, to conduct discovery, request an evidentiary

21  hearing, or seek to expand the record.   Put another way, if Plaintiff seeks relief related to

---

23  [16] Plaintiff also alleges that the psychologist's examination "was to include tests
24  that measure *present* symptoms such as cognitive slowing."  (Doc. 13-1 at 50) (emphasis
added).   It is unclear to the Court how any *present* mental illness Plaintiff may be
25  suffering is relevant to claims that his criminal defense attorney failed to investigate,
present, and advocate in accordance with Plaintiff's mental health in 2015.

26  [17] Pursuant to Rule 8 of the Rules Governing Section 2255 Cases, movants seeking
27  habeas corpus relief have no right to an evidentiary hearing.  Rather, "[i]f the motion is
not dismissed, the judge must … determine *whether* an evidentiary hearing is warranted."

28  [18] *See* Doc. 65 in 2:15-CR-0205-TLN-EFB (E.D. Cal. 2015) at 9; *see also* fn. 9,
*supra*.

JDDL

his § 2255 proceeding, his relief lies in that court and he is strongly encouraged to seek whatever relief he believes necessary to vindicate his § 2255 Motion in the Eastern District of California.  His failure thus far to seek such relief in that court does not create an actionable case in this court.

Similarly, with regard to Plaintiff's allegation that the psychologist's report was "needed to buttress his expected request under the [IADA]" to delay his extradition, his claim is without merit.  For the reasons discussed more fully in Part III.D, *infra*, Plaintiff has no right to any hearing contesting his extradition, nor to present any particular evidence in opposition to his extradition.  It follows that Defendants cannot have interfered with a right that Plaintiff does not have.

Plaintiff's requested relief with regard to the psychologist's examination and its use in his § 2255 and extradition proceedings is, effectively, a request for mandamus.[19] The issuance of a writ of mandamus is an extraordinary remedy, which may only be granted in the exercise of sound discretion.  *Miller v. French*, 530 U.S. 327, 339 (2000).  For mandamus relief, a petitioner must satisfy three elements: (1) that petitioner has a clear and certain claim; (2) that the respondent has a non-discretionary, ministerial duty, which is so plain as to be free from doubt; and (3) that the petitioner does not have an adequate available remedy.  *Johnson v. Reilly*, 349 F.3d 1149, 1153 (9th Cir. 2003); *Benny v. U.S. Parole Com'n*, 295 F.3d 977, 898 (9th Cir. 2002).

Plaintiff has not satisfied any of these requirements.  Plaintiff's claim is neither clear nor certain; Plaintiff has not demonstrated that Defendants have a non-discretionary, ministerial duty, which is so plain as to be free from doubt, that they allow thepsychologist to examine Plaintiff  or prevent his extradition; and Plaintiff has failed to demonstrate that he has no other adequate remedy, such as seeking relief in his § 2255 proceeding.

Accordingly, for all of these reasons, Plaintiff has failed to state a claim in Count

---

[19] Plaintiff appears to suggest as much, stating that "[t]his Court has jurisdiction to provide mandamus relief pursuant to 28 U.S.C. § 1361." (Doc. 13-1 at 5).

1    One, and it will thus be dismissed.

2    **B.    Count Two**

3    Plaintiff alleges that the Defendants have violated his substantive due process

4    rights under the Fifth Amendment.   Specifically, Plaintiff alleges that Defendants

5    Baltazar, Rhodes, Jusino, and Mitchell, and, nominally, the United States, have "deprived

6    Plaintiff of his fundamental liberty interest by interfering with his right to access legal

7    and professional services needed to protect his life and safety."   (Doc. 13-1 at 55).

8    Plaintiff further asserts that he "has a right to be transferred from USP Tucson only under

9    circumstances that pose no serious threat to his life or safety."   (*Id.*).[20]

10    Although the Fifth Amendment's Due Process Clause states only that "[n]o person

11    shall ... be deprived of life, liberty, or property, without due process of law," *see* U.S.

12    Const. amend. V, courts have long held that it also provides substantive protections for

13    certain unenumerated fundamental rights.   *See e.g. Washington v. Glucksberg,* 521 U.S.

14    702, 719 (1997) ("The Due Process Clause guarantees more than fair process, and the

15    'liberty' it protects includes more than the absence of physical restraint."); *see*

16    *also Planned Parenthood of S.E. Penn. v. Casey,* 505 U.S. 833, 847 (1992) ("It is

17    tempting, as a means of curbing the discretion of federal judges, to suppose that liberty

18    encompasses no more than those rights already guaranteed to the individual against

19    federal interference by the express provisions of the first eight Amendments to the

20    Constitution.   But of course this Court has never accepted that view." (internal citation

21    _____

22    [20] Plaintiff also alleges that "[t]he Defendants and/or their subordinates retaliated
against [him] … confined him in restrictive housing and knowingly caused him to be

23    raped and beaten by other inmates[,] . . . denied [Plaintiff] care when he fell into
psychiatric crisis and nearly killed himself[,]" and "falsified Plaintiff's official mental

24    health records…" (Doc. 13-1 at 54).  Plaintiff does seek relief for any First Amendment
retaliation, Eighth Amendment conditions of confinement, threat to safety, or medical

25    care, or any due process claims related to his medical records in his Second Amended
Complaint.  Although Plaintiff asserts that these allegations are "to provide context" and

26    "to show the need for injunctive relief," they are irrelevant to Plaintiff's stated cause of
action in Count Two, and will not be considered here as a basis for relief.  Further, the

27    Court lacks jurisdiction to order injunctive relief as to issues not properly before it in the
underlying complaint.  *See Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810

28    F.3d 631, 633 (9th Cir. 2015); *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997)
(an injunction should not issue if it "is not of the same character, and deals with a matter
lying wholly outside the issues in the suit.").

omitted)).  Indeed, the Supreme Court has a long history of recognizing unenumerated fundamental rights as protected by substantive due process.  *See, e.g., Casey,* 505 U.S. 833 (to have an abortion); *Roe v. Wade,* 410 U.S. 113 (1973) (same); *Eisenstadt v. Baird,* 405 U.S. 438 (1972) (to use contraception); *Griswold v. Connecticut,* 381 U.S. 479 (1965) (to use contraception, to marital privacy); *Loving v. Virginia,* 388 U.S. 1 (1967) (to marry); *Rochin v. California,* 342 U.S. 165 (1952) (to bodily integrity); *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535 (1942) (to have children); *Pierce v. Society of Sisters,* 268 U.S. 510 (1925) (to direct the education and upbringing of one's children); *Meyer v. Nebraska,* 262 U.S. 390 (1923) (same).

In *Glucksberg,* the Supreme Court set forth the two elements of the substantive due process analysis:

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed."  Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest.

*Glucksberg,* 521 U.S. at 720-21 (citations omitted).

However, the Supreme Court has cautioned against the doctrine's expansion. *See Glucksberg,* 521 U.S. at 720 (stating that the Court must restrain the expansion of substantive due process "because guideposts for responsible decision-making in this uncharted area are scarce and open-ended" and because judicial extension of constitutional protection for an asserted substantive due process right "place[s] the matter outside the arena of public debate and legislative action" (citations omitted)); *Reno v. Flores,* 507 U.S. 292, 302 (1993) (noting that "[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field" (quoting *Collins v. Harker Heights,* 503 U.S. 115, 125 (1992))).  When evaluating a substantive due process claim, *Glucksberg* instructs that substantive due process requires a "careful description of the asserted fundamental liberty interest." *Glucksberg,* 521 U.S. at 721 (quotation and citations omitted); *see also Flores,* 507 U.S.

1   at 302 (noting that the asserted liberty interest must be construed narrowly to avoid

2   unintended consequences).

3          Here, Plaintiff's asserted substantive due process right is not carefully described.

4   Indeed, Plaintiff variously defines it as a "fundamental liberty interest … to access legal

5   [] professional services needed to protect his life and safety" (Doc. 13-1 at 55), a "right to

6   be transferred from USP Tucson only under circumstances that pose no serious threat to

7   his life or safety" (*id.*), a "fundamental liberty interest[] … in access at his own expense

8   to legal services needed to protect his life and safety, free from unjustifiable official

9   interference" (*id.* at 66), and a "fundamental liberty interest[] … in freedom from

10  intergovernmental custody transfers that unjustifiably pose a serious threat to his life or

11  safety" (*id.*).   That Plaintiff cannot provide even a single definition of his supposed

12  fundamental liberty interest militates against finding such an interest here.

13         More importantly, however, Plaintiff has failed to point to any precedent holding

14  that he has the substantive due process right he alleges here.   Plaintiff points only to

15  *Raich v. Gonzales*, 500 F.3d 850 (9th Cir. 2007), and *Fitzharris v. Wolff*, 702 F.2d 836

16  (9th Cir. 1983).   *Raich* determined whether the application of the California Controlled

17  Substances Act unconstitutionally infringed on the alleged substantive due process of

18  growers and users of marijuana.   500 F.3d at 864-66.   *Raich* did not deal with the rights

19  of federal prisoners to examination by a psychologist or extradition pursuant to the

20  IADA, and beyond its general discussion of the framework for evaluating substantive due

21  process claims, *id.* at 861-4, is inapposite to Plaintiff's particular asserted rights.

22  *Fitzharris* at least deals contextually with a prisoner seeking to avoid transfer to another

23  prison for personal safety reasons, but does so only in the course of determining who is

24  the "prevailing party" for purposes of attorneys' fees.   702 F.2d at 838-9.   *Fitzharris* does

25  not discuss substantive due process at all, let alone provide a basis for Plaintiff's asserted

26  rights.

27         Further, Plaintiff has failed to allege, let alone facts to support, that his asserted

28  fundamental liberty interest is "deeply rooted in this Nation's history and tradition," and

"implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed." *Glucksberg,* 521 U.S. at 720-21 (citations omitted). Conclusory and vague allegations will not support a cause of action. *Ivey*, 673 F.2d at 268. Further, even a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pleaded. *Id.*

Accordingly, Plaintiff has failed to state a claim in Count Two, and it will thus be dismissed.

### C.   Count Three

Plaintiff alleges that Defendants have violated his rights under the APA by refusing to allow the examination by the psychologist. Specifically, Plaintiff alleges that "Defendants' refusal to admit [the psychologist] for a legal visit was arbitrary and capricious in that it was contrary to federal regulations and BOP policy providing that such legal visits by professionals working in conjunction with attorneys are to be allowed" (Doc. 13-1 at 58). Plaintiff further alleges that "Defendants' refusal to admit [the psychologist] was also arbitrary and capricious in that they failed to state any rationale for this decision … [and] failed to follow their own prescribed procedures for restricting legal visits" in that they "failed to consult with the BOP Western Regional Counsel prior to imposing restrictions on [the psychologist's] legal visit" (*id.* at 58-9). Plaintiff also alleges that the Defendants "violated the APA by approving Plaintiff's rendition to Solano County, California officials under the IADA" because it "denied [Plaintiff's] claimed right to an extradition hearing and proper transfer procedures under the IADA" (*id.* at 59).[21]

---

[21] Plaintiff also alleges that "as set forth in other claims above" – presumably referring to Count Two – "Defendants' approval of Plaintiff's transfer violated his rights [under] the Fifth Amendment of the Constitution." (Doc. 13-1 at 60). For the reasons set forth in Part III.B, *supra*, Plaintiff has failed to state a claim pursuant to the Fifth Amendment.

Plaintiff further alleges that "Defendants' approval of Plaintiff's transfer was arbitrary and capricious because it was contrary to the procedures and standards set forth in the IADA …[and] violates federal law and agency policy and procedures." (Doc. 13-1 at 60). For the reasons set forth in Part III.D, *infra*, Plaintiff has failed to state a claim pursuant to the IADA and its associated BOP policies and procedures.

The APA authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.  However, where no other statute explicitly provides for a private right of action – and Plaintiff does not point to any[22] – the agency action complained of must be a "final agency action" to obtain judicial review under the APA. 5 U.S.C. § 704; *see also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61-2 (2004) ("Where no other statute provides a private right of action, the 'agency action' complained of must be '*final* agency action.'") (emphasis in original).  With regard to the denial of Plaintiff's request that he be examined by the psychologist, Plaintiff alleges that this constitutes "agency action within the meaning of 5 U.S.C. [§] 551(13) in that it is a final disposition of Plaintiff's request that [the psychologist] be admitted" (Doc. 13-1 at 56).   Plaintiff further alleges that the Defendants' denial is "a sanction in that it is a limitation or condition affecting the freedom of a person, to wit, the freedom of [the psychologist] and [Plaintiff] to meet," and is "a withholding of relief as it is a failure to recognize [Plaintiff's] claimed right to meet with [the psychologist]" (Doc 13-1 at 56-7). Notably, Plaintiff cites no authority for these contentions, instead only referring the Court to the definitions of "order," "sanction," and "agency action" in 5 U.S.C. § 551(6), (10), and (11).

Similarly, with regard to his claim related to Defendants' approval of his extradition to California, Plaintiff alleges that "[t]his approval was an agency action in that it was a final disposition of Solano County's request for custody and of [Plaintiff's] request that such custody be denied" (Doc. 13-1 at 59).  Plaintiff further alleges that said action "is also a withholding of relief in that Defendants refused to recognize Plaintiff's claimed right to an extradition hearing and to a transfer process that adheres to the terms of the IADA."[23]   Again, however, Plaintiff cites no authority for these contentions, again

---

[22] Plaintiff specifically asserts that "the cause of action [in Count Three] arises from 5 U.S.C. § 704." (Doc. 13-1 at 56 n.26).

[23] For the reasons set forth in Part III.D, *infra*, Defendants have complied with the "terms of the IADA" because the protections Plaintiff seeks do not apply to him.

1    only referring the Court to 5 U.S.C. § 551 and the definitions contained therein.

2        Simply put, none of the actions Plaintiff complains of constitute "final agency

3    action" so as to support this Court's ability to review Plaintiff's claims pursuant to the

4    APA.   Plaintiff's construction of "agency action" and "sanction" explode § 551 to

5    encompass virtually any conduct a prison official may take.   Such a construction is not

6    contemplated by the APA.   *See ACLU v. NSA,* 493 F.3d 644, 678 (6th Cir.2007) ("The

7    plaintiffs challenge the NSA's warrantless interception of overseas communications, the

8    NSA's failure to comply with FISA's warrant requirements, and the NSA's presumed

9    failure to comply with FISA's minimization procedures.   This is conduct, not 'agency

10   action.'")*; see also Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety*

11   *Comm'n,* 324 F.3d 726, 731 (D.C. Cir.2003) ("The agency's conduct thus far amounts to

12   an investigation of appellant's sprinkler heads ... [and such] agency activities do not

13   constitute final agency action within the meaning of the APA .... "); *Afifi v. Lynch*, 1010

14   F.Supp.3d 90, 110 n.14 (D.D.C. 2015) ("The authorization or use of a GPS device does

15   not fall within any of these categories nor is it the "equivalent ... thereof."   A law

16   enforcement agency's approval of the use of a specific investigative technique in the

17   context of a specific investigation does not constitute final agency action within the

18   meaning of the APA.").   There is simply "no authority to support the invocation of the

19   APA to challenge generalized conduct." *ACLU*, 493 F.3d at 678.

20       More importantly, "the only agency action that can be compelled under the APA is

21   action legally *required.*" *Norton*, 542 U.S. at 63 (emphasis in original).   That is, the APA

22   only provides a judicial remedy for government action that is beyond the scope of its

23   authority, or for a failure to act when required to do so.   *Id.* at 64 ("The limitation to

24   *required* agency action rules out judicial direction of even discrete agency action that is

25   not demanded by law (which includes, of course, agency regulations that have the force

26   of law).") (emphasis in original).

27       Here, Plaintiff has not identified any action that Defendants are "legally required"

28   to take but have nevertheless failed to take, or that they have acted in excess of their

authority. Defendants have no legal requirement to admit the psychologist for purposes of examining Plaintiff, nor do they have any authority to disapprove Plaintiff's extradition to California under the IADA.[24]   Although Plaintiff points to 28 C.F.R. §§ 543.13 – 543.16 for the proposition that "professionals working in conjunction with an inmate's attorney are to be accorded the same status as attorneys with respect to visiting and correspondence," nothing in those regulations require that such professionals be admitted whenever a prisoner demands.   *See* 28 C.F.R. § 543.14 (providing prison wardens with the discretion to "limit or den[y ] attorney visits and correspondence"). Further, to the extent Plaintiff asserts that BOP Program Statement 1315.07 "require[es] consultation with Regional Counsel prior to imposing any restrictions on visits by attorneys and professionals working in conjunction with attorneys" (Doc. 13-1 at 58 n.31), the reliance on a BOP Program Statement does not create an actionable APA claim because so long as the program statement provisions are not inconsistent with the associated regulations, they are valid interpretive rules not subject to the procedural requirements of the APA.   *Gunderson v. Hood*, 268 F.3d 1149, 1154 (9th Cir. 2001). Nothing in 28 C.F.R. §§ 543.13 – 543.16 requires that regional counsel be consulted prior to denying or limiting an attorney's or associated professionals' visit with an inmate. Accordingly, the BOP's *policy* of requiring consultation with outside counsel before imposing restrictions visits by attorneys or associated professionals is not "agency action" subject to APA review.   *See Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) (finding that "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law.").   As such, even if Defendants' conduct constituted final agency action for purposes of review under the APA, Plaintiff has failed to demonstrate that his requested relief[25] can be compelled pursuant to the

---

[24] *See* discussion in Part III.D, *infra*.

[25] Namely, a declaratory judgment that "Defendants have violated [Plaintiff's] constitutional and statutory rights (1) by refusing to allow a legal visit by Plaintiff's forensic expert; and (2) by approving Plaintiff's transfer directly to out-of-state

APA.  Accordingly, Plaintiff has failed to state a claim in Count Three, and it will thus be dismissed.[26]

### D.    Count Four

Plaintiff alleges that Defendants Baltazar and Molinar, and, nominally, the United States, have violated his rights under the IADA and the due process clause of the Fifth Amendment by "unlawfully depriv[ing] Plaintiff of his right to an extradition hearing and to contest his transfer under the terms of the IADA" (Doc. 13-1 at 63).[27]  Plaintiff asserts that "[u]nder the IADA and relevant BOP policy, Plaintiff has the right to an extradition

---

authorities – neither action taken in conformance with prescribed [BOP] procedures – all in violation of the Administrative Procedures Act," and an injunction ordering Defendants to "[a]llow unaccompanied legal visits during standard business hours by [the psychologist]" and to "[r]efrain from transferring [Plaintiff] from [USP-Tucson] until a [BOP] psychologist and an independent psychologist to be arranged by [Plaintiff] have agreed that the proposed transfer poses no serious threat to [Plaintiff's] life or safety." (Doc. 13-1 at 67).

[26]  Further, to the extent Plaintiff also alleges that "[t]he final agency action unjustifiably interfered with [Plaintiff's] access to professional legal services and other aspects of his right of access to the courts, in violation of the First Amendment…" (Doc. 13-1 at 57), he has failed to state a claim pursuant to the First Amendment for the reasons set forth in Part III.A, *supra*.

[27]  Plaintiff also asserts that "he is entitled by law to earn good conduct time toward satisfaction of his federal sentence, and that it does not appear he will be allowed to earn such credit while he is out of BOP custody," and that he "has been afforded no process to contest this probable loss of good time credit." (Doc. 13-1 at 64-5).  Plaintiff does not seek any relief in his Second Amended Complaint related to the "probable loss" of good time credit.  Rule 8(a)(3) of the Federal Rules of Civil Procedure states that a pleading must contain "a demand for the relief sought, which may include relief in the alternative or different types of relief."  Because Plaintiff has failed to make a claim for relief related to his good time credits, he has failed to meet this basic pleading requirement.

Further, even if Plaintiff had sought relief related to the alleged "probable loss" of good time credits – an injury which is entirely speculative at this point – this civil rights action would not be the proper vehicle by which to seek such relief.  Rather, a challenge to the loss of good time credits is, effectively, a challenge against the length of prisoner's confinement, and thus must be brought as a habeas petition pursuant to 28 U.S.C. § 2241.  *See* **Error! Main Document Only.***Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989).; *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (holding that **Error! Main Document Only.**if judgment in favor of Plaintiff in a civil rights action regarding the denial of due process in a prison disciplinary proceeding would invalidate the deprivation of good time credits, the claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), unless Plaintiff can show that the disciplinary conviction has been overturned).

hearing and to a meaningful opportunity to contest his IADA transfer" (*id.* at 62). Specifically, Plaintiff alleges that "Article IV(a) of the IADA requires that the appropriate court of the requesting jurisdiction 'shall' have 'duly approved, recorded, and transmitted' a proper request before that request can be recognized," and that "there 'shall' be a period of 30 days after a request is perfected before it is honored, during which time a prisoner may contest [the] transfer" (*id.* at 63). Plaintiff also asserts that "Article VI(b) mandates that no person who is found 'to be mentally ill' can be transferred under the terms of the IADA" (*id.*). Citing Arizona Revised Statute § 13-3850, clause two of Article IV of the United States Constitution, and 18 U.S.C. § 3192, Plaintiff asserts that he "is entitled by law to an extradition hearing" (*id.*). Plaintiff also asserts that BOP Program Statement 5800.15 "provides for various mandatory steps and protections in the IADA process and requires that inmates 'will be' turned over to local authorities for an extradition hearing prior to transfer…" (*id.*). Plaintiff further asserts that due to "serious irregularities in the extradition documents – including misidentification of the Plaintiff – and other issues relating to his prosecution in Solano County, Plaintiff submits that he has meritorious grounds on which to challenge his extradition" (*id.* at 64).

Whether Plaintiff has meritorious grounds to challenge his extradition and whether he may do so in this Court via a civil rights lawsuit are separate questions, however. To the extent Plaintiff relies on the IADA as the basis for his claims, he has failed to state a cause of action. A prisoner transferred pursuant to the Uniform Criminal Extradition Act (UCEA) is explicitly granted a right to a pretransfer hearing at which he is informed of the receiving State's request for custody, his right to counsel, and his right to apply for a writ of habeas corpus challenging the custody request. He is also permitted "a reasonable time" in which to apply for the writ.[28] However, no similar provision is contained in the IADA. *See Cuyler v. Adams*, 449 U.S. 433, 443 (1981).

---

[28] Section 10 of the UCEA, codified in Arizona at Arizona Revised Statute § 13-3850, provides:

No person arrested upon such warrant shall be delivered over to the agent

Rather, the IADA provides two procedures under which the prisoner against whom a detainer has been lodged may be transferred to the temporary custody of the receiving State. One of these procedures may be invoked by the prisoner (Article III of the IADA), the other by the prosecuting attorney of the receiving State (Article IV of the IADA). From the documents provided by Plaintiff, it appears that the temporary custody sought here was initiated by the prosecuting agency in Solano County, California (*see* Doc. 13-1 at 83); accordingly, the prisoner-initiated process (Article III) is not at issue here.

Article IV of the IADA provides the procedure by which the prosecutor in the receiving State may initiate the transfer. First, the prosecutor must file with the authorities in the sending State written notice of the custody request, approved by a court having jurisdiction to hear the underlying charges. For the next 30 days,[29] the prisoner and prosecutor must wait while the Governor of the sending State, on his own motion or

whom the executive authority demanding him shall have appointed to receive him unless he has been informed of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand legal counsel; and if the prisoner, his friends, or counsel shall state that he or they desire to test the legality of his arrest, the prisoner shall be taken forthwith before a judge of a court of record, who shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the public prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state.

The person being extradited has no right to challenge the facts surrounding the underlying crime or the lodging of the custody request at the first hearing. Even at the later habeas corpus hearing, if any, he is permitted to question only "(a) whether the extradition documents on their face are in order; (b) whether [he] has been charged with a crime in the demanding state; (c) whether [he] is the person named in the request for extradition; and (d) whether [he] is a fugitive." *Michigan v. Doran*, 439 U.S. 282, 289 (1978).

[29] Notably, during this 30-day period, BOP guidelines provide that "the inmate may petition the Warden to disapprove the state's request for temporary custody." *See* BOP Program Statement 5800.15, Ch. 6, sect. 611(a). Plaintiff apparently did so. *See* Doc. 13-1 at 77-81. However, the guidelines also make clear that, in accordance with Artcile IV of the IADA, "[t]he Warden is not obligated to grant the inmate's request," nor is there any provision that Plaintiff be granted a hearing or that he has a right to present any particular evidence as part of his petition. *See* BOP Program Statement 5800.15, Ch. 6, sect. 611(a); *see also Bloomgarden v. Bureau of Prisons*, No. CV 06-1426, 2009 WL 10680209 (C.D. Cal. Feb. 24, 2009).

that of the prisoner, decides whether to disapprove the request. If the Governor does not disapprove the transfer, the prisoner is transferred to the temporary custody of the receiving State where he must be brought to trial on the charges underlying the detainer within 120 days of his arrival. If the prisoner is not brought to trial within the time period, the charges will be dismissed with prejudice, absent good cause shown. *See e.g. Cuyler*, 449 U.S. at 443-44. Although nothing in the plain text of Article IV provides for a pretransfer hearing, the Supreme Court has held that a prisoner incarcerated in a jurisdiction that has adopted the UCEA is entitled to the procedural protections of that Act, particularly the right to pretransfer hearing, before being transferred to another jurisdiction pursuant to Article IV of the IADA. *Id.* at 449.

Plaintiff, however, is not incarcerated in a jurisdiction that has adopted the UCEA. Although Plaintiff is physically detained within the State of Arizona – hence his presumed reference to Ariz. Rev. Stat. § 13-3850 – Plaintiff is a *federal* prisoner incarcerated under the jurisdiction of the United States. The United States has not adopted the UCEA. *Bloomgarden* 2009 WL 10680209 at, *9. (citing *Wilson v. Fenton*, 684 F.2d 249, 251 & n.2 (3rd Cir. 1982).[30] Accordingly, Plaintiff is not entitled to the protections of the UCEA, as incorporated into Article IV of the IADA.[31] Therefore, to the extent Plaintiff seeks relief pursuant to Article IV of the IADA, he has failed to state a claim.

---

[30] Plaintiff's citations to Article IV, clause two of the United States Constitution, and 18 U.S.C. § 3192 are no more helpful. Article IV, clause two, of the United States Constitution applies only to "fugitives" who "flee from Justice." Plaintiff does not allege that he is a fugitive fleeing justice; indeed, he specifically states that he is "eager to meet the Solano charges." (Doc. 13-1 at 77). Title 18, section 3192, meanwhile, provides for the protection of accused persons who are "delivered by any foreign government to an agent of the United States." 18 U.S.C. 3192. Plaintiff is not being delivered by any foreign government to any agent of the United States.

[31] Even if Plaintiff was entitled to UCEA protections, he has not brought his claims properly. Arizona Revised Statute § 13-3850, which codifies the protections of the UCEA, explicitly provides that challenges to extradition must be brought via a petition for a writ of habeas corpus. Ariz. Rev. Stat. § 13-3850 ("if the prisoner … shall state that he … desire[s] to test the legality of his arrest, the prisoner shall be taken forthwith before a judge of a court of record, who shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus.") (emphasis added). Plaintiff does not seek, nor could he seek, habeas corpus relief in this civil rights action.

To the extent Plaintiff seeks relief pursuant to Article VI of the IADA, he has similarly failed to state a claim. As an initial matter, Plaintiff has not been "adjudged to be mentally ill." 18 U.S.C. § 2. Further, if Plaintiff *had* been adjudged to be mentally ill, the IADA – and the protections in it – would not apply to Plaintiff. *See United States v. Collins*, 90 F.3d 1420, 1427 (9th Cir. 1996) ("Under the terms of the IADA, the IADA does not apply to persons who are mentally ill.") (citing 18 U.S.C. App. II, art. VI(b) ("No provision of this agreement, and no remedy made available by this agreement, shall apply to any person who is adjudged to be mentally ill.")). As such, to the extent Plaintiff seeks relief pursuant to Article VI of the IADA, he has failed to state a claim.

To the extent Plaintiff seeks relief pursuant to BOP Program Statement 5800.15, he has also failed to state a claim. As Plaintiff notes, BOP Program Statement 5800.15 "specifically excepts IADA transfers from the ambit of [BOP's] authority and discretion…" (Doc. 13-1 at 61, n. 38). *See* BOP Program Statement 5800.15, Correctional Systems Manual, Ch. 6 (Sept. 23, 2016). However, for the reasons stated previously, Plaintiff cannot rely on the IADA as affording a basis for relief. Accordingly, whatever non-discretionary authority the BOP exercises under Program Statement 5800.15 pursuant to the IADA is inapplicable to Plaintiff, and thus cannot serve as the basis for any protected interest Plaintiff seeks to vindicate. *See also Sandin v. Conner*, 5151 U.S. 472, 482-82 (1995) (prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates."). As such, to the extent Plaintiff seeks relief pursuant to BOP Program Statement 5800.15, he has failed to state a claim.

Finally, to the extent Plaintiff seeks relief pursuant to the due process provisions of the Fifth Amendment, he has failed to state a claim. A procedural due process analysis requires two determinations: First, "whether there exists a liberty or property interest which has been interfered with," and if so, "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009). A liberty interest may be created either via the due process clause itself, or

federal law.  *Id.*  Plaintiff makes no allegation that the due process provisions of the Fifth Amendment create the liberty interest he complains of here – namely, to contest his extradition pursuant to the IADA.  As such, any protected liberty interest must flow from federal law, namely the IADA or BOP prison regulations.  However, as discussed above, no protected liberty interest has been recognized under the IADA or BOP regulations.  *See Brown v. McGrew*, No. CV 12-1479-SVW (JPR), 2013 WL 6512948, at *5 (C.D. Cal. 2013) ("To the extent the BOP's regulations afford inmates more extensive procedural protections … the Due Process Clause does not require the BOP to 'comply with its own, more generous procedures.'") (quoting *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994) (*overruled on other grounds by Sandin,* 515 U.S. at 483-84); *see also Armstrong v. Warden of USP Atwater*, CV 10-173-DLB (HC), 2011 WL 2553266, at *8 (E.D. Cal. 2011) (applying *Walker* to federal BOP regulations).

Accordingly, for all of these reasons, Plaintiff has failed to state a claim in Count Four, and it will thus be dismissed.

## V.   Leave to Amend

For the foregoing reasons, Plaintiff's Second Amended Complaint will be dismissed for failure to state a claim upon which relief may be granted.  Within 30 days, Plaintiff may submit a third amended complaint to cure the deficiencies outlined above. Plaintiff must clearly designate on the face of the document that it is the "Third Amended Complaint."  A third amended complaint supersedes any previous complaint.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).  After amendment, the Court will treat any previous complaint as nonexistent.  *Ferdik*, 963 F.2d at 1262.  Any cause of action that was raised in a previous complaint and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in a third amended complaint.  *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

## VI.   Motion

1    In his TRO/PI Motion, Plaintiff seeks an injunction ordering the BOP "to allow
2    [Plaintiff to] receive an independent psychiatric examination, to determine his current
3    mental state," and "[t]o temporarily block a planned extradition to California to stand trial
4    for the same crimes for which he is now incarcerated." (Doc. 12 at 1).

5    Whether to grant or deny a motion for a temporary restraining order is within the
6    Court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132-33 (9th Cir.
7    1979). "The standard for issuing a temporary restraining order is identical to the standard
8    for issuing a preliminary injunction." *Whitman v. Hawaiian Tug & Barge*
9    *Corporation/Young Bros., Ltd. Salaried Pension Plan*, 27 F. Supp. 2d 1225, 1228 (D.
10   Haw. 1998). To obtain a preliminary injunction, the moving party must show "that he is
11   likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence
12   of preliminary relief, that the balance of equities tips in his favor, and that an injunction is
13   in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 21
14   (2008). The moving party has the burden of proof on each element of the test.
15   *Environmental Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal.
16   2000).

17   The Ninth Circuit has also concluded that the "serious questions" version of the
18   sliding scale test for preliminary injunctions remains viable after *Winter*. Under that test,
19   "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious
20   questions going to the merits were raised and the balance of hardships tips sharply in the
21   plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th
22   Cir. 2011).

23   Here, because Plaintiff has failed to state a claim against any named Defendant in
24   his Second Amended Complaint, he has necessarily failed to demonstrate that he is likely
25   to succeed on the merits of his claims or that there are serious questions going to the
26   merits of his claims. Accordingly, Plaintiff's Emergency Motion for Temporary
27   Restraining Order and Preliminary Injunction will be denied.

28   **IT IS ORDERED:**

(1)     Plaintiff's Notice of Errata (Doc. 13) is **construed** as a Motion to Amend Complaint, and, so construed is **granted**.  The Court will treat the Corrected Second Amended Complaint (Doc. 13-1) as the operative Complaint for this action.

(2)     The Second Amended Complaint (Doc. 13-1) is **dismissed** for failure to state a claim.  Plaintiff has **30 days** from the date this Order is filed to file a third amended complaint in compliance with this Order.

(3)     If Plaintiff fails to file an amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice.

(4)     Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 12) is **denied**.

Dated this 30th day of August, 2018.

Honorable Raner C. Collins
Chief United States District Judge